**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ROBERT D. HAMPSON,**

Plaintiff,

v.

**SHERYL RAMSTAD HVASS, LOU STENDER, NANETTE M. SCHROEDER, STEVEN HERJE, DEAN LEE, and TERRIAN PANGERL,**

Defendants.

---

Civil No. 00-1063 (PAM/JGL)

**REPORT AND RECOMMENDATION**

APPEARANCES

Plaintiff Robert D. Hampson, pro se.

Richard Lynn Varco, Jr., Esq., on behalf of Defendant Steven Herje.

Matthew J. Hanzel, Esq., on behalf of Defendant Dean Lee.

Kari Jo Ferguson, Esq., on behalf of Defendants Sheryl Ramstad Hvass, Lou Stender, Nanette M. Schroeder, and Terrian Pangerl.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Plaintiff Robert D. Hampson's motion for a temporary restraining order (Doc. No. 12), Defendant Steven Herje's motion to dismiss (Doc. No. 19), Defendant Dean Lee's motion to dismiss or for summary judgment (Doc. No. 35), and Defendants Sheryl Ramstad Hvass, Lou Stender, Nanette M. Schroeder, and Terrian Pangerl's motion for summary judgment

JAN 0 9 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(Doc. No. 57). This matter has been referred to the undersigned Magistrate Judge for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND

Plaintiff Hampson is an inmate currently incarcerated at the Minnesota Correctional Facility in Moose Lake, Minnesota (MCF-ML). In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff claims that Defendants were deliberately indifferent to a serious medical need on three occasions when he was allegedly denied timely refills of prescription medication to treat his high blood pressure. Plaintiff alleges that on September 16, 1999, he ran out of his prescription medication, Tenormin, despite having notified the Health Services Unit at MCF-ML ("Health Services") of his depleting supply on September 9th and 15th. Plaintiff did not receive the medication until the evening of September 17th. Plaintiff told Health Services on December 23, 1999, that he would exhaust his supply of Cardizem-CD on December 27, 1999, which he did. According to Plaintiff, Health Services also failed to make prescription medication available from April 8-11, 2000, despite Plaintiff's verbal warning that he would run out. Mr. Hampson contends that the three stoppages of medication were contrary to nationally accepted standards of care and suggests that Health Services should have obtained the prescriptions from a local pharmacy rather than rely on its usual supplier in Oklahoma.

In particular, Plaintiff Hampson is suing Defendant Sheryl Ramstad Hvass, Minnesota Commissioner of Corrections, for not preventing the third stoppage of medication after Plaintiff notified her of the second disruption by letter. Plaintiff sues Lou Stender, Warden of MCF-ML, for failing to take action to insure that Plaintiff received timely refills, even though Warden Stender was made aware of the situation. Nanette Schroeder, Director of the Health Department at the Minnesota Department of Corrections, is accused of failing to supply inmates with refills in a timely manner before and after an investigation of the supply system. Plaintiff is suing Steven Herje, an Investigator with the Ombudsman for Corrections, for not responding to a voice mail message and letter from Plaintiff regarding the delayed refills. Dean Lee, M.D., the Regional Medical Director for Correctional Medical Systems, allegedly failed "to prevent further problems" with Health Services on Plaintiff's behalf regarding his medication. Plaintiff sues Terrian Pangerl, an Administrative Nurse Manager at MCF-ML, for not developing an effective system to insure timely prescription refills.

## II. DISCUSSION

### A. <u>The Motions to Dismiss.</u>

A motion to dismiss may be made for "failure to state a claim upon which relief can be granted" and requires a court to review only the pleadings to determine whether the plaintiff has a viable claim. <u>See</u> Fed. R. Civ. P.

12(b)(6). However, where on a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Id.; see also Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996). In this case, the parties have offered and the Court has considered information outside the pleadings, namely affidavits and prison records. Consequently, the motion to dismiss will be disposed of as provided in Rule 56.

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. See id. Materiality is determined by examining the substantive law of the claims. See id. The non-moving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not rely on only mere allegations or denials. See id.; Lambert v. City of

Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (citations omitted). However, the facts are examined in the light most favorable to the non-moving party. See Anderson, 477 U.S. at 255. Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Title 42 U.S.C. § 1983 provides relief to an inmate when a prison official deprives him of rights guaranteed by the Constitution or other federal law. Thus, a § 1983 complaint must allege a particular violation of federal law. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 817 n.4 (1985). Section 1983 itself is not a source of substantive rights, but is a means of vindicating federal rights guaranteed elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994) (plurality opinion) (citation omitted).

In the present case, Plaintiff Hampson does not explicitly state which federal or Constitutional law is implicated. However, liberally construing Plaintiff's Complaint, the Court concludes that Plaintiff raises an Eighth Amendment claim. Prison officials violate the Eighth Amendment of the United States Constitution if they commit "acts or omissions sufficiently harmful to

evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This standard has both an objective and subjective component; the plaintiff must demonstrate both that he suffered from an objectively serious medical need and that prison officials actually knew about but deliberately disregarded his need. See Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). The plaintiff "must show more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Medical malpractice is also insufficient to constitute a constitutional violation. See Dulany, 132 F.3d at 1239 (citing Estelle, 429 U.S. at 104-106). Because Plaintiff Hampson alleges that Defendants were deliberately indifferent to a serious medical need when he was allegedly denied timely refills of prescription medication to treat his high blood pressure, the Court will analyze his § 1983 claim and Defendants' motions in the context of the Eighth Amendment.

**1. Defendant Steven Herje's Motion to Dismiss.**

Plaintiff Hampson contends that Defendant Steven Herje, a member of the Minnesota Ombudsman for the Corrections' office, did not respond to communications from Plaintiff concerning the alleged failure by prison officials to refill his prescription medication. Mr. Herje responds that he is not responsible for the delivery of health care or the availability of medication for Plaintiff at MCF-ML. Furthermore, Mr. Herje asserts that a failure to

respond to messages does not constitute deliberate indifference to a serious medical need, and thus, as a matter of law, is insufficient to support a claim for relief under § 1983.

After Plaintiff's medication was disrupted in September 1999, he contacted the Minnesota Department of Health, and the matter was assigned to Mr. Herje for investigation. Mr. Herje contacted Terrian Pangerl, a supervisor in the Health Services Unit, who told Mr. Herje that in response to situations such as Plaintiff's, MCF-ML officials would no longer rely on inmates to monitor their own needs for prescription refills. Mr. Herje met with Plaintiff, informed him of the new procedure, and closed the file on December 9, 1999. Nevertheless, Plaintiff's supply of Cardizem-CD ran out on December 27, 1999. Although Plaintiff asserts he subsequently wrote a letter to Mr. Herje, Mr. Herje denies receiving any such letter. Likewise, Mr. Herje does not recall receiving a voice mail message from Plaintiff.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial as to Defendant Herje. There are no facts which could prove that Mr. Herje acted with the requisite culpability in deliberately disregarding Plaintiff's medical needs even if Mr. Herje purposely ignored Plaintiff's communications. There is no allegation in the Complaint that Mr. Herje is responsible for the delivery of health care or the supply of medication

at MCF-ML, and in fact, Mr. Herje is not chargeable with those duties. Mr. Herje's purported failure to respond to Plaintiff's communications does not rise to deliberate indifference, which requires a greater showing than gross negligence. Estate of Rosenberg, 56 F.3d at 37. Furthermore, not responding to Plaintiff's communications does not constitute a violation of any other federal or constitutionally protected right.

The Court finds that no genuine issues of material fact exist as to Mr. Herje's involvement with Plaintiff's medical situation, and Defendant Herje is entitled to judgment as a matter of law. This Court therefore recommends that Defendant Herje's motion to dismiss be granted.

**2. Defendant Dean Lee's Motion to Dismiss or for Summary Judgment.**

Dr. Dean Lee is the Medical Director for Correctional Medical Systems, and he allegedly failed to take action to prevent further interruptions of Plaintiff Hampson's medication after Plaintiff wrote him on September 26, 1999. Because the Court considers matters and submissions outside the pleadings, the motion will be examined under Rule 56.

Dr. Lee bases his first argument on Minn. Stat. § 145.682, which establishes mandatory deadlines for the disclosure of expert-related information in any action against a health care provider which alleges "malpractice, error, mistake or failure to cure." Minn. Stat. § 145.682, subd. 2. In Dr. Lee's Answer to the Complaint, he affirmatively averred that § 145.682

governed Plaintiff's action and demanded full compliance with the requirements set forth in that statute. Based on Plaintiff's noncompliance with the mandatory deadlines, Dr. Lee asserts that Plaintiff's Complaint should be dismissed with prejudice.

Dr. Lee's reliance on § 145.682 and Anderson v. United States, No. Civ. 5-96-235, 1998 WL 92460 (D. Minn. Jan. 5, 1998), is misplaced. In Anderson, which was a medical malpractice action based on the Federal Tort Claims Act ("FTCA"), the court explicitly recognized that "claims brought pursuant to the FTCA are governed by [s]tate substantive law" before it applied § 145.682. Id. at *3. On the other hand, Mr. Hampson's § 1983 case involves exclusively federal law and implicates no state substantive law. Moreover, Plaintiff's case presumably is not founded on medical malpractice, which is a state law issue and therefore not appropriate for a § 1983 claim, but on the Eighth Amendment. Thus, the Court finds § 145.682 inapplicable and declines to recommend dismissal of the Complaint on this basis.

Turning to whether Dr. Lee is entitled to judgment as a matter of law, Dr. Lee submits that Mr. Hampson has failed to raise a genuine issue of material fact because he has not produced verifying medical evidence establishing that there was a detrimental effect of the alleged delay in filling his prescription, as required by Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). When an inmate claims that a delay in medical treatment is a

constitutional deprivation, "the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (8th Cir. 1994) (emphasis in Hill)), abrogated on other grounds by Reece v. Groose, 60 F.3d 487 (8th Cir. 1995).

In the present case, there is evidence in the record on September 17, 1999, Plaintiff's blood pressure was 165/117, which was higher than other recorded times, and he felt anxious. (Pl. Resp. to Def. Hvass et. al's Mot. for Summ. J. Ex. B.) This modicum of evidence is sufficient to create a triable issue as to whether the alleged disruption of Plaintiff's treatment interfered with a serious medical need. See Jolly v. Badgett, 144 F.3d 573, 574 (8th Cir. 1998). However, there is no verifying medical evidence in the record supporting Mr. Hampson's claim that he suffered any detrimental effects on December 27, 1999, or from April 8-11, 1999. Therefore, the Court concludes that Plaintiff has produced verifying medical evidence that the delayed medication had an detrimental effect on his condition only on September 17, 1999. However, Mr. Hampson has not established an essential element of his deliberate indifference claim with respect to the December 1999 and April 2000 incidents, and Defendant Lee is therefore entitled to summary judgment with respect to those occasions.

As for the second element of the Eighth Amendment analysis, the prison official's subjective state of mind, the Court finds that Plaintiff Hampson has not sufficiently established that Dr. Lee acted with the requisite culpability by deliberately disregarding his medical needs. Dr. Lee was not Plaintiff's treating physician, and Plaintiff clarifies that he is not suing Dr. Lee in his capacity as a physician, but in his supervisory capacity as the Regional Medical Director. (Pl. Mem. Opp. to Def. Lee's Mot. Dismiss at 2.) Plaintiff wrote Dr. Lee on September 26, 1999, about the twenty-four hour delay in receiving his medication. Dr. Lee avers that he received Plaintiff's letter ten days "after the fact," (Lee Aff. ¶ 3), at which time Plaintiff was again properly receiving his medication. There is no evidence in the record contradicting Dr. Lee's averment, and by the time Dr. Lee received the letter, there was no medical need to be disregarded given that Plaintiff's medication had been resumed. Nevertheless, Dr. Lee responded to Plaintiff's letter on October 5, 1999, which was all that could be done at that time. The Court therefore finds that Dr. Lee was not deliberately indifferent to Plaintiff's medical needs in September 1999.

Although the Court has already recommended granting Defendant Lee's motion with respect to the two subsequent incidents, the Court also finds that as a matter of law, Dr. Lee was not deliberately indifferent to Plaintiff's medical needs in December 1999 or April 2000. Prison officials are not liable "if they responded reasonably to a risk, even if the harm ultimately was not

averted." Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)). Additionally, deliberate indifference requires a showing that "the treatment [was] so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. at 1240-41 (citing Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990)). Here, there is no evidence of Dr. Lee intentionally maltreating Plaintiff, causing others to maltreat Plaintiff, refusing to provide essential care, or directing other prison officials to refuse to provide such care. Furthermore, Dr. Lee stated, in his opinion and based on a reasonable degree of medical certainty, prison officials knew that Plaintiff was medically capable of tolerating brief discontinuances of his medication because Plaintiff had voluntarily discontinued his medication on three prior occasions. (Lee Aff. ¶ 4; Schroeder Aff. ¶ 4.) There is no evidence in the record to the contrary. Plaintiff's claim against Dr. Lee therefore fails as a matter of law, and Dr. Lee's motion should be granted.

### B. Defendants Sheryl Ramstad Hvass, Lou Stender, Nanette M. Schroeder, and Terrian Pangerl's Motion for Summary Judgment.

In his Complaint, Plaintiff Hampson asserts that Defendant Sheryl Ramstad Hvass failed to prevent a disruption in his medication schedule after Plaintiff notified her of the second interruption by letter. MCF-ML Warden Lou Stender allegedly failed to take action to insure that Plaintiff received timely prescription refills, even after Warden Stender was made aware of the

situation. Plaintiff contends that Nanette Schroeder, Director of the Health Department at the Minnesota Department of Corrections, did not supply inmates with refills in a timely manner even after an investigation of the supply procedure. Plaintiff maintains that Terrian Pangerl, an Administrative Nurse Manager, did not develop an effective system to insure timely prescription refills.

**1. Plaintiff Hampson's Eighth Amendment Claim.**

As discussed in Part II.A.2 above, Plaintiff has not produced verifying medical evidence that the delayed medication had an detrimental effect on his condition in December 1999 or April 2000. Thus, Defendants Hvass, Stender, Schroeder, and Pangerl (collectively "Defendants") are entitled to summary judgment as to those occasions. Second, the Court finds that Defendants did not deliberately disregard Plaintiff's medical needs so as to violate the Eighth Amendment on any of the three occasions. Dr. Lee and Ms. Schroeder stated that prison officials knew Plaintiff could safely tolerate brief discontinuances of his medication, (Lee Aff. ¶ 4; Schroeder Aff. ¶ 4), which indicates that officials did not act with disregard for Plaintiff's needs. In addition, a review of the record in the light most favorable to Plaintiff shows that Defendants were not deliberately indifferent to Plaintiff's medical needs.

Plaintiff states that he advised Health Services twice in September that he would deplete his supply of Tenormin on September 16, 1999. Ms.

Pangerl wrote Plaintiff on September 17th, explaining since he was given a thirty day supply of medicine on August 17th, his prescription should last until September 17th. (Pl. Resp. to Def. Hvass et. al's Mot. Summ. J. Ex. A.) Plaintiff is correct in observing that the month of August has thirty-one days, and the prescription would therefore have run out on September 16th. The Medication Administration Record for September 1999 shows that Plaintiff received a refill on September 17, 1999. (Pangerl Aff. Ex. A at 4.) Plaintiff concedes that he received his medication eleven hours after the usual time for his dosage. (Pl. Resp. to Def. Hvass et. al's Mot. Summ. J. at 1.) While Ms. Pangerl may have been negligent in calculating the date on which Plaintiff would need a new prescription, the Court finds that she did not intentionally maltreat Plaintiff or refuse to provide essential care. Ms. Pangerl's actions cannot be attributed to Defendants Hvass, Stender, or Schroeder, and none of those Defendants even knew about the incident until it was resolved. Thus, the Court finds that Defendants did not deliberately disregard Plaintiff's medical needs during the September incident.

Similarly, when Plaintiff ran out of Cardizem on December 27, 1999, the delay in refilling the prescription was caused by the holiday and the Oklahoma pharmacy's request for a clarification, not any deliberate indifference on behalf of prison officials. (Pangerl Aff. ¶ 12.) The Department of Corrections admittedly experienced some problems with implementing the

Oklahoma pharmacy supply system, (Stender Aff. Ex. A), but there is no evidence that the problems were caused by any deliberate indifference by prison officials. The permissible inference is that MCF-ML experienced typical adjustments and problems to be expected in any new business partnership. Moreover, when Plaintiff's doctor was told that the Cardizem had not arrived, even though it had been ordered by Health Services, the doctor prescribed another high blood pressure medication, Capoten, which Plaintiff received on December 28th. (Id.) The Court finds that substituting similar medication when the originally prescribed medication is unavailable does not evidence deliberate indifference to Plaintiff's medical requirements.

Regarding the April 2000 interruption in medication, the record does not support a finding of deliberate indifference. The uncontradicted record shows on April 9th, Plaintiff requested his refill of Minipress, which had been ordered from the Oklahoma pharmacy.[1] Plaintiff requested the refill even though he should have had dosages through April 10th given that he received a thirty day supply on March 12th. (Pangerl Aff. ¶ 19.) When the nurse asked Plaintiff on April 9th if he still had dosages of Minipress, his new medicine, and Tenormin, Plaintiff said he did. The nurse told Plaintiff that he would receive

[1] There was error relating to the pharmacy refilling the prescription. The Pharmacy Error/Incident Report explained that Plaintiff's Minipress was not filled but was instead "profiled." (Pangerl Aff. Ex. E.) Apparently, although the order for Plaintiff's refill was sent by Health Services on April 3, 2000, the pharmacy determined it was "too soon to fill." (Id.)

his refill the next day. (Id.) However, on the evening of April 9th, Plaintiff placed all of his remaining blood pressure medication in the medication drop box at Health Services and submitted a kite indicating that he was voluntarily ceasing his medication regimen. (Id. ¶ 20.) Mr. Hampson's refill arrived as promised on April 10, 2000. (Id. ¶ 21.) Ms. Pangerl met with Plaintiff on April 11, 2000, and urged him to resume taking his medicine. Although Plaintiff refused, Ms. Pangerl assured him that his medicine would remain at Health Services if he changed his mind. (Id. at 22.) Viewing the facts in the light most favorable to Plaintiff, the only conclusion is that any disruption in Plaintiff's medication was caused by Plaintiff's choice to stop taking it.

Considering all the facts and circumstances relevant to the April 2000 incident, the Court finds that none of Defendants acted with deliberate disregard for Plaintiff's medical condition. On April 9th, Plaintiff told Health Services that he still had some dosages of his medication, which he voluntarily returned. Plaintiff's own actions do not, as a matter of law, constitute intentional mistreatment or a refusal to administer essential care by prison officials. Also, ordering a refill too soon from a pharmacy does not constitute deliberate indifference to Plaintiff; instead, it evidences a concern that Plaintiff timely receive his medication.

Furthermore, examining the actions of each Defendant, the Court finds no deliberate indifference by any of the individuals. Defendant Hvass, in

response to a letter from Plaintiff, requested that Warden Stender initiate a review of Plaintiff's complaints. (Stender Aff. ¶ 3.) As a result, Dr. Paulson, the Department of Corrections' Medical Advisor, reviewed Plaintiff's medical record, and Defendant Pangerl and Dr. Pearce met with Plaintiff to discuss his medication issues. (Schroeder Aff. ¶¶ 3,4; Stender Aff. ¶ 3 & Ex. A.) After the September 1999 interruption, Ms. Pangerl notified Mr. Herje that due to grievances such as Plaintiff's, inmates such as Mr. Hampson no longer monitored their own medicine supplies. (Herje Aff. ¶ 4.) In addition, Defendant Schroeder requested that Defendant Pangerl draft an operating guideline to ensure that all chronic medications are refilled timely. (Schroeder Aff. ¶ 6.) Defendant Pangerl did draft such a procedure, which even Plaintiff commends. (Pl. Resp. to Def. Hvass et. al's Mot. Summ. J. at 3.) Moreover, each time Mr. Hampson voluntarily ceased taking his medication, Health Services staff informed him of the health risks and urged him to continue taking his medicine. (Pangerl Aff. ¶¶ 2, 14, 20, 22, 24.) The Court finds the individual actions of Defendants demonstrate concern for and responsiveness to Plaintiff's medical needs.

In conclusion, the Court sympathizes with Plaintiff and his sporadic complications with receiving his prescription medication. However, the Court cannot conclude that the actions of Defendants Hvass, Stender, Schroeder, or Pangerl rise to the level of deliberate indifference to Mr.

Hampson's serious medical needs, as defined by Estelle v. Gamble, 429 U.S. 97, 106 (1976), and its progeny. Given that there are no genuine issues as to any material facts, Defendants are entitled to a judgment as a matter of law.

**2. Qualified Immunity.**

Defendants Hvass, Stender, Schroeder, and Pangerl raise the defense of qualified immunity. The qualified immunity doctrine shields government officials in the exercise of their discretionary functions and protects officials as long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). To overcome qualified immunity, a plaintiff must

> asscrt a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.

Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998).

As to the first two elements, it is clearly established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs. See Estelle, 429 U.S. at 104. Regarding the third part of the inquiry, an official is deliberately indifferent if he disregards a known risk to a prisoner's health. See

Dulany v. Carnahan, 132 F.3d at 1239 (8th Cir. 1997). However, even if an official knows of a risk, he is not liable for a subsequent injury if he responded reasonably to the known risk. See Farmer v. Brennan, 511 U.S. 825, 844 (1994). With this standard in mind and considering the actions of Defendants as set forth previously in this Report and Recommendation, the Court finds that Defendants responded reasonably to Plaintiff's health risks. See Estelle, 429 U.S. at 106 (holding that even negligence in diagnosing, treating, or responding to a known medical condition does not state an Eighth Amendment violation). The Court finds that Defendants are entitled to qualified immunity.

**C. Plaintiff's Request for a Temporary Restraining Order.**

Plaintiff Hampson moves for a temporary restraining order, but the motion was filed without the required proof of service and Defendants have not filed responses to the motion. It is this Court's policy to entertain no ex parte motions. (Pretrial Order of August 1, 2000; Doc. No. 21.) Thus, the Court declines to address the merits of the motion and recommends that it be denied without prejudice.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Plaintiff Robert D. Hampson's Motion for Temporary Restraining Order (Doc. No. 12) should be **DENIED WITHOUT PREJUDICE**;

(2) Defendant Steven Herje's Motion to Dismiss (Doc. No. 19) should be **GRANTED**;

(3) Defendant Dean Lee's Motion to Dismiss or for Summary Judgment (Doc. No. 35) should be **GRANTED**;

(4) Defendants Sheryl Ramstad Hvass, Lou Stender, Nanette M. Schroeder, and Terrian Pangerl's Motion for Summary Judgment (Doc. No. 57) should be **GRANTED**; and

(5) Plaintiff Robert D. Hampson's Complaint (Doc. No. 1) should be **DISMISSED WITH PREJUDICE.**

Dated: January 9, 2001.

JONATHAN LEBEDOFF
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 29, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.